Bissell, J.,
delivered the opinion of the court.
This judgment which Cavis obtained against McCampbell for commissions on the sale of a ranch is assailed because the contract is supposed to be so tainted with dishonesty as to prevent its enforcement and because the court after verdict permitted the plaintiff to dismiss the action as to one of the defendants and take judgment against the other. The case was tried originally before a justice of the peace, appealed to the county court and tried by a jury which found a verdict against the appellant.
A very brief statement of the case will suffice to explain it, and this will of itself afford abundant reasons for the affirmance of the judgment. In 1895, George B. McCampbell occupied a ranch known as the McCampbell Ranch, about a mile and a half from Platteville, which is east of Denver. A year or more prior to that time McCampbell had listed the ranch with the appellee Cavis for the purposes of sale. As originally listed the ranch contained between five and six hundred acres, though a portion of it had been sold at the time of the transactions which gave rise to this action. The situation of the title is not very clear; it would appear that McCampbell had an interest in the land, though the title to one half of it stood in his wife and the title to the other half in one Arment of Kansas. The situation could probably be dug out of the record, but it is beside any question in the case. In the fall of 1895, one Banning, told Mead that he *244 desired to buy a ranch, but at the same time stated that he’ did not want to deal with any agents but preferred to trade directly with the owner. At this time Mead owned a little tract of land in that vicinity, but this did not at that time make a part of the property about which the parties negotiated. Banning expected to receive a considerable sum of money from the prosecution of a claim against the government and on receipt of it wanted to put it into land. Mead thereupon went to Cavis, stated the situation, and asked him if he had a ranch which would subserve the purpose and could be bought for about the sum which Banning wanted to spend, that is, in the neighborhood of $10,000. Cavis called Mead’s attention to the McCampbell ranch, and thought from Mead’s statements it was about what Mr. Banning would like and McCampbell, who was the supposed owner was sent for. When he came and the situation was explained to him, McCampbell stated he would be very glad to sell his ranch at about that price and agreed with Cavis that Mead should-bring Banning to him and he would directly negotiate with him with reference to the purchase and sale of the property.' He also directly agreed with Cavis that he would undertake, all the labor and trouble incident to the working up and successful prosecution of the trade, and would pay Cavis his regular commission if he produced a purchaser. These facts are stated as they must have been found by the jury. Mead thereupon took Banning to McCampbell, introduced him, and the negotiations proceeded. They continued for a long time because Banning’s money did not arrive until the latter part of January following. In the mean time there was some little interruption in the trade. Mr. Wright had some correspondence with the banker in Kansas and was by him offered a money inducement to aid him in carrying it on. This was known to McCampbell, who stated to Cavis that probably Mr. Wright would have to be taken in on the deal. Nothing further was said about it between Cavis and McCampbell, nor was anything said between the parties as to ¡ any reduction of commissions because of any claim that Mr. - *245 Wright might have for his labor. At sometime Banning stated to McCampbell in Mr. Wright’s office that the trade was off and he would have nothing further to do with it, and yet afterwards, when his money came, according to McCamp•bell’s testimony, Banning came to his house and said he was ready to close up the deal, if he could arrange for it.- No contract was ever executed by the parties, except the one that Mr. Wright drew between Arment, McCampbell’s wife •and Banning. The trade was concluded on substantially the basis originally discussed between the parties except that some little property was put in at a named price as a part of the consideration. It is quite true that Mr. Banning was without means as a customer at the time the agreement was first made and the negotiations started, but they were had -with the expectation that Mr. Banning would receive-his money as soon as his claim against the government was settled and he would then conclude the deal. The purchase was made almost immediately after he got his money, the title was deeded to Mr. Banning’s wife and he paid the consideration. At the time that McCampbell made his arrangement with Cavis and agreed to pay the commissions, he undoubtedly represented his wife and was fully authorized .by her to act in her name, whereby she became under the arrangement liable to Cavis for payment of the commissions. When the suit was begun before the justice of the peace, both McCampbell and his wife were named as defendants. After the case went to the county court, it stood for trial on •the ordinary statement made before a justice of the peace on the commencement of an action, and no written pleadings appear. No objection was made to the prosecution of the ■suit in that form and the ease went to trial unquestioned as to its regularity concerning parties. The plaintiff introduced a good portion of his testimony. The defendant introduced Mr. Banning as a witness out of the usual order and before the plaintiff rested, and nothing was said or -done by the defendant by way of objecting to the precedure until ¡the plaintiff, rested when the defendant insisted a joint action *246 would not lie against McCampbell and Ms wife for the payment of these commissions. The court held the defendant had waived this objection by proceeding with the trial and putting his own witness on the stand, and the .case was submitted to the jury who found a verdict against both defendants. Afterwards the plaintiff asked leave .of the court to dismiss the case as to Mrs. McCampbell without prejudice, and take judgment against the remaining defendant McCampbell. The motion was granted and judgment entered accordingly.
So far as concerns all questions of fact in the case, they were .found by the jury under unobjectionable instructions against the appellant. We, therefore, assume that the contract was abundantly and sufficiently proven and that McCampbell entered into an express contract with Cavis substantially as he claimed it, and agreed that when the sale was made to Mr. Banning he would pay him a commission without any other and further rendition of service than the production of a purchaser who might buy. The purchase was made by the person who was introduced and for substantially the price at which the property was placed in the hands of the agent. Under these circumstances Mr. McCampbell cannot escape a liability on the express promise which he made, which rested on an apparently good consideration that he must carry out his contract unless there is something in the circumstances which makes out a defense to the suit. Miles v. Mays, 15 Colo. 133.
We are unable to see the force of the suggestion, that the original arrangement between Mead, McCampbell and Cavis was at all tainted with dishonesty or that the method of its execution was contrary to good morals, and the contract unenforceable because of its want of good faith towards the prospective purchaser. The arrangement between these parties was simply the concealment of Cavis’s relations to the contract. In point of fact Cavis had nothing whatever to do with the trade save as stated, and practically Banning dealt with the owner, was liable for no commissions, nor does *247 it appear in any wise that the price of the property was enhanced because of the commissions which McCampbell, tlie owner, had obligated himself to pay the agent on the production of a purchaser. Under the agreement Mead introduced Banning to McCampbell, and thereafter the trade went on until its ultimate conclusion. We cannot see that the buyer was harmed nor that anything was done which could in any wise affect the validity of the sale. It is suggested, rather than urged in the argument that after Mr. Wright came into the transaction by reason of his appointment through Arment, Banning abandoned the trade and afterwards bought the property because of the efforts which Mr. Wright made to effect the transfer. Whatever force there is in the argument, and it is very little, is destroyed by the verdict of the jury. The jury found that the trade was carried out under the original agreement between McCampbell and Banning; that it was effectuated because of the introduction of Banning to McCampbell; that Cavis was the procuring cause, and that McCampbell made a specific contract to pay Cavis his commissions. So far as we are able to see, though we are not bound to express an opinion about it, the verdict was abundantly supported by the testimony and there is no legal obstacle to the affirmance of the judgment.
The only remaining question respects the regularity of the order winch permitted'the plaintiff to dismiss the action as to Mrs. McCampbell and take judgment against one defendant after verdict had also been rendered against the other. Under ordinary circumstances there would be no qrrestion of this sort in the case. It is provided by statute, which has been interpreted by numerous decisions of the supreme court that where there is a misjoinder of parties, plaintiff or defendant, and the party complaining does not make a timely objection, he cannot afterwards be heard to complain because of the misjoinder of parties. It is difficult to see why the same principle is not applicable to a case which is brought before a justice of the peace and is after- *248 wards prosecuted in the county court, although there are no written pleadings. Parties are permitted to prosecute on a statement of their cause of action, and after appeal the case is tried de novo on the cause as stated. Whether the same identical rule can be applied and when it should be taken to be operative we need not determine. It is enough to suggest that where a case is thus commenced and tried, and the trial goes on in the county court, the defendant cannot then be heard to complain that he is joined with one who is not jointly liable with him, but that a party has stated a cause of action against two, who are only severally liable. It is not entirely clear, though we express no opinion about it that the action could not be maintained on the contract both against McCampbell and his wife. The order dismissing the action against Mrs. McCampbell can be sustained. The supreme court has gone so far as to hold that after judgment against two, who were not jointly liable, and the reversal of the case on appeal, the party should be permitted after the cause has been remanded to the lower court, to dismiss as to the one improperly joined, and take judgment against the others against whom a cause of action was stated and proven. Since this practice has been approved we are bound to affirm this judgment. Mattison v. Childs et al., 5 Colo. 78; Miller, Adm’x, et al. v. Blake, 6 Colo. 118; Irwine v. Wood et al., 7 Colo. 477; Marriott v. Clise, 12 Colo. 561.
No other question of sufficient‘importance to require discussion is suggested by the assignments of error, or the arguments of counsel, and we therefore affirm the judgment.

Affirmed.